# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No.: 23-cr-401 (CRC)** |
| | : | |
| **v.** | : | **Civil Disorder; 18 U.S.C. § 231(a)(3)** |
| | : | |
| **JOSEPH BIERBRODT**, | : | **Assaulting, Resisting, or Impeding** |
| | : | **Certain Officers; 18 U.S.C. § 111(a)(1)** |
| **Defendant**. | : | |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the Defendant, Joseph Bierbrodt, with the concurrence of the Defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1.      The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2.      On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.  The grounds around the Capitol were posted and cordoned off, and the entire area as well as the Capitol building itself were restricted as that term is used in Title 18, United States Code, Section 1752 due to the fact that the Vice President and the immediate family of the Vice President, among others, would be visiting the Capitol complex that day.

3.      On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. This joint session of Congress was an official proceeding as that term is used in Title 18, United States Code, Section 1512. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4.      As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.  By shortly after 1:00 PM, the situation at the Capitol had become a civil disorder as that term is used in Title 18, United States Code, Section 231, and throughout the rest of the afternoon the civil disorder obstructed the Secret Service's ability to perform the federally protected function of protecting Vice President Pence.

5.      At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building

and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6.      At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7.      Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### The Defendant's Participation in the January 6, 2021, Capitol Riot

8.      On January 6, 2021, the Defendant and his brother, William Bierbrodt, attended the "Stop the Steal" rally in Washington, D.C. After the rally, the Defendant and his brother proceeded

on foot toward the United States Capitol. His route took him to the North Lawn approaching the North Access Path, where he first entered a restricted area at approximately 2:32 p.m. By 2:36 p.m., the Defendant, his brother, other rioters entered the North Terrace area of the Capitol. At 2:38 p.m., the Defendant and William Bierbrodt were at the Northwest Terrace approaching the Northwest Courtyard.

9.      At approximately 2:41 p.m., the Defendant, William Bierbrodt, and other rioters were situated on the exterior of the Parliamentarian's Door. The door was locked, preventing the rioters from entering the Capitol. At that time, the Defendant had his back turned as William Bierbrodt repeatedly smashed his cane against the door's window until it finally shattered. Having broken the window, William Bierbrodt reached his hand through the now broken window and unlocked the Parliamentarian's Door. With the Parliamentarian's Door now open, the Defendant, along with other rioters, entered the United States Capitol. At the time he entered, the Defendant knew that he was not authorized to be inside the Capitol building.

10.     Immediately upon his entry, the Defendant assaulted United States Capitol Police Officer J.J, who was at that time engaging in his official duties by protecting the Senate Wing and attempting to prevent rioters from entering the Capitol. Specifically, the Defendant made physical contact with Officer J.J. by grabbing him in the upper torso, pushing him against a wall, spinning him around, and shoving him into the arms of another rioter. The Defendant committed these acts intentionally, voluntarily, and with the use of force. Further, the Defendant committed this assault with the intended purpose of obstructing, impeding, and interfering with Officer J.J.'s ability to prevent the Defendant and other rioters from entering the Capitol incident to and during a civil disorder. In fact, the Defendant's actions prevented Officer J.J. from discharging his lawful and authorized duties of protecting the Senate Wing and preventing rioters from entering the Capitol.

The civil disorder in which the Defendant participated obstructed, delayed, or adversely affected commerce or the movement of any article or commodity in commerce, or the conduct or performance of any federally protected function.

11.    After the assault, the Defendant moved to a location in the Senate Wing where he met a line of United States Capitol police officers who prevented his further progress into the building. While there, officers deployed OC spray on the Defendant, who retreated upon being sprayed.

12.    The Defendant spent approximately three minutes inside the Capitol before exiting at 2:44 p.m. through the same door through in which he entered. Once outside the Capitol, the Defendant approached William Bierbrodt's "knee scooter," which was parked in the Northwest Courtyard, where he had his eyes flushed with water.

13.    At 3:02 p.m., the Defendant assisted William Bierbrodt with his exit through the Parliamentarian's Door. The Defendant and William Bierbrodt remained on the Capitol grounds until approximately 5:28 p.m., meandering in the Northwest Courtyard, East Plaza, Senate Plaza, and North Lawn.

### Elements of the Offenses

14.    The parties agree that Civil Disorder, in violation of 18 U.S.C. § 231(a)(3), requires the following elements:

   a.  First, the defendant knowingly committed or attempted to commit an act with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers;

b. Second, at the time of the defendant's actual or attempted act, the law enforcement officers were engaged in the lawful performance of their official duties incident to and during a civil disorder;

c. Third, the civil disorder in any way or degree obstructed, delayed, or adversely affected commerce or the movement of any article or commodity in commerce, or the conduct or performance of any federally protected function.

15.    The parties agree that Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1), requires the following elements:

a. First, the Defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with J.J., an officer with the United States Capitol Police;

b. Second, the Defendant did such acts forcibly;

c. Third, the Defendant did such acts voluntarily and intentionally;

d. Fourth, J.J. was an officer or an employee of the United States who was then engaged in the performance of his official duties; and

e. Fifth, the Defendant made physical contact with J.J., or acted with the intent to commit another felony, that is, a violation of 18 U.S.C. s 231.

*Defendant's Acknowledgments*

16.    The defendant knowingly and voluntarily admits to all the elements as set forth above.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    *s/ Jack E. Burkhead*
       JACK E. BURKHEAD
       Assistant United States Attorney
       Bar No. 10493
       Capitol Siege Section
       U.S. Attorney's Office
       District of Columbia
       Telephone No: 505-224-1434
       Email Address: jack.e.burkhead@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, Joseph Bierbrodt, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 10-25-24

Joseph Bierbrodt
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 10·25·24

Stephen F. Brennwald
Attorney for Defendant